UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

MELINDA DESMARATTES,

                    Plaintiff,

          -against-

CONSOLIDATED EDISON, INC.,
SUNRISE CREDIT SERVICES, INC.,
and L J ROSS ASSOCIATES, INC.,

                  Defendants.

---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20-CV-4723 (KAM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

        Plaintiff Melinda Desmarattes ("Plaintiff"), proceeding *pro se*, commenced the

instant action against Defendants Consolidated Edison, Inc. ("ConEdison"); Sunrise

Credit Services, Inc. ("Sunrise"); and L J Ross Associates, Inc. ("LJRA" or "Defendant")

on September 29, 2020, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. §§ 1681–1681x, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§§ 1692–1692p. (Complaint ("Compl."), ECF No. 1, at 6–9.) Plaintiff subsequently filed

an amended complaint on January 18, 2022, alleging violations of the FDCPA and the

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41–58. (First Amended

Complaint ("FAC"), ECF No. 21, ¶ 1.) Defendant LJRA then filed a motion to dismiss,

and Plaintiff responded by sending LJRA yet another amended complaint, alleging four

violations of the FDCPA. (*See* Def.'s Mot. to Dismiss, ECF No. 23, at ECF page 3; Second

Amended Complaint ("SAC"), ECF No. 23, at ECF pages 49, 51, ¶¶ 1, 36.[1]) On

---

[1] Consistent with the frequent practice of having all of the motion papers bundled and
filed simultaneously, Defendant filed the motion to dismiss the FAC, Plaintiff's proposed SAC,

September 30, 2022, the Honorable Kiyo A. Matsumoto referred Defendant's motion to dismiss the FAC to the undersigned magistrate judge. (*See* Sept. 30, 2022 ECF Order Referring Motion.)

For the reasons set forth below, the Court respectfully recommends that Defendant's motion to dismiss the FAC be denied as moot and that, in an exercise of discretion, Plaintiff's SAC be construed as a motion to amend under Federal Rule of Civil Procedure 15. For the reasons set forth below, the Court further recommends that Plaintiff be permitted to proceed on one of the claims set forth in the proposed SAC, but that leave to amend should be denied as to the remainder of her claims.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.  Factual Background**

As Plaintiff is a *pro se* litigant, in reviewing her SAC as a motion to amend, the Court considers the factual allegations and information set forth in the original complaint, its attachments, the FAC, "to the extent such allegations are not repeated in the [SAC]," and the proposed SAC. *Briggs v. SCO Fam. of Servs.*, No. 16-CV-3882 (GRB) (SIL), 2021 WL 7209004, at *2 (E.D.N.Y. Jan. 6, 2021); *see also Milano v. Astrue,* No. 05-CV-6527 (KMW) (DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007).

The SAC alleges that, in 2019, Plaintiff received a dunning letter[2] from Defendant that sought to collect $1,992. (SAC, ECF No. 23, ECF page 51, ¶ 25.) The alleged debt was related to an outstanding ConEdison account, "a regulated utility providing electric and gas service in New York City," which was "incurred for personal, family, or

---

and Defendant's Reply thereto simultaneously, but under one docket entry. Accordingly, citations to these documents include the ECF page number.

[2] A "dunning letter" is "a debt collection letter." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361 (2d Cir. 2005).

household purposes." (*Id.*, ECF pages 50–51, ¶¶ 12, 27; Compl., ECF No. 1, at 6.) In the original complaint, Plaintiff stated that "[t]he debt amount of $1992 reported to national consumer reporting agencies by the Defendant [LJRA] is incorrect." (Compl., ECF No. 1, at 7.) Plaintiff further stated that she "made a payment in December 2019 for $142.32 to Defendant [Sunrise]," related to the alleged debt to ConEdison and "spoke to the [Sunrise] Customer Representative in September 2020 who confirmed [the] $142.32 payment to Defendant [Sunrise]." (*Id.* at 8.) In the SAC, Plaintiff unequivocally denies that she owes $1,992 to ConEdison or LJRA. (SAC, ECF No. 23, ECF page 51, ¶¶ 30–33.)

Plaintiff also alleges that "[i]n numerous instances, Defendant call[ed] Plaintiff repeatedly or continuously with intent to annoy, harass, or abuse," noting that Defendant "continue[d] to call even after being told, either orally or in writing, to stop," and that Defendant had "call[ed] multiple times per day or frequently over an extended period of time (for example, calling some Plaintiff three or more times per day)." (FAC, ECF No. 21, ¶ 13.) She also alleges that Defendant "further attempted to collect the alleged debt from Plaintiff by reporting the alleged debt to consumer reporting agencies instructing and causing consumer reporting agencies to publish the alleged debt in consumer reports concerning Plaintiff." (SAC, ECF No. 23, ECF page 51, ¶ 28.) Plaintiff further claims that she was harmed in that she "suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased interest rate, los[s] of mortgage loans, [and] the mental and emotional pain, anxiety, anguish, humiliation and embarrassment of credit denials." (Compl., ECF No. 1, at 7.) She also alleges that she "suffered documented physical and emotional ailments due to the stress of the Defendants['] call to the Plaintiff's cell phone." (Compl., ECF No. 1, at 7.)

Plaintiff included several attachments to her original complaint, including the following:[3] (1) her Experian credit report dated August 27, 2020, listing a $1,992 debt associated with LJRA (noting the original creditor as ConEdison) and Sunrise (again listing the original creditor as ConEdison); (2) her credit score report, as prepared by "myFICO," noting a $1,992 debt associated with "Consolidated Edison" and a second entry for the same amount associated with "Con Edison"; (3) three emails (from Avant/WebBank; LendingPoint, LLC; and Northpointe Bank), declining to approve Plaintiff for a loan; (4) medical records from June 9, 2020, indicating that Plaintiff has had hair loss for six years and noting alopecia scarring in a dermatologic exam; and (5) a letter from Sunrise, dated December 9, 2019, that states: "Sunrise Credit Services has agreed to accept a temporary payment plan. It should be understood that this is temporary and the above account will be reviewed after the final payment," and lists six scheduled payments of $142.32 due monthly starting December 21, 2019 and ending May 21, 2020. (Compl., ECF No. 1, Exs. A (Experian and FICO information), C (loan denial emails and medical record excerpt), and D (Sunrise Letter).)

The September 23, 2019 email from Avant/WebBank made the following observations: "Key factors that adversely affected your credit score: Derogatory public record or collection files, Too few accounts currently paid as agreed, Proportion of loan balances to loan amounts is too high, Number of accounts with delinquency, [and] The

---

[3] The Court considers the exhibits attached to the original complaint, and to the extent any consideration is given to the dunning letter, *see infra*, which was referenced in Plaintiff's pleadings and included with Defendant's answer, "construe[s] all reasonable inferences in the non-movant's favor." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305–06 (2d Cir. 2021); *see also id.* at 304 (concluding that the district court erred "by relying on several documents attached to Defendants' answer" without converting the motion for judgment on the pleadings to a motion for summary judgment as required by Rule 12(d)); *Milano v. Astrue*, No. 05-CV-6527 (KMW) (DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007) (observing that "where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations").

number of inquiries on the consumer's credit file . . . ." (*Id.*) LendingPoint's December 14, 2019 email similarly observed "[k]ey factors that adversely affected [Plaintiff's] credit score: Serious delinquency, and public record or collection filed," among other factors. (*Id.*, ECF page 39.) The August 11, 2020 email from a branch manager at Northpointe Bank in New Jersey states: "[t]he loan is not being approved due to not getting an approvable through Desktop Underwriter. I think this has to do with the decrease in credit score." (*Id.*, ECF page 41.)[4]

## II. Procedural History

### A. Initial Pleadings

As noted above, Plaintiff filed her original complaint against all three Defendants on September 29, 2020. (Compl., ECF No. 1.) Also on September 29, 2020, Plaintiff moved to proceed *in forma pauperis*, which was granted by Judge Matsumoto on October 28, 2020. (Oct. 28, 2020 ECF Order, ECF No. 5.) In connection with the grant of *in forma pauperis* status, Judge Matsumoto dismissed Plaintiff's FDCPA claim against ConEdison for failure to state a claim on which relief may be granted. (*Id.*) On April 12, 2021, Defendant LJRA filed its answer and affirmative defenses. (LJRA's Answer ("Answer"), ECF No. 11.) On July 21, 2021, Plaintiff filed a notice of settlement as to

---

[4] The Court notes that Defendant does not argue that Plaintiff lacks standing in this case. In addition, the Court notes that Judge Matsumoto previously found in another FDCPA case brought by Ms. Desmarattes that "Plaintiff's allegation that she was denied two loans due to the inaccurate credit reporting resulting from the false debt information furnished by [Defendant] constitutes a 'specific allegation[] of . . . monetary harm' that confers Plaintiff constitutional standing." *Desmarattes v. Enhanced Recovery Co., LLC,* No. 20-CV-4722 (KAM) (LB), 2022 WL 4121217, at *4 (E.D.N.Y. Sept. 9, 2022) (quoting *Spira v. TransUnion LLC,* No. 21-CV-2367 (KMK), 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022)). Here, Plaintiff made similar claims to those alleged in *Enhanced Recovery* in the original complaint and included attachments to the Complaint that document her credit denials and other harms. (Compl., ECF No. 1.)

Defendant Sunrise, and it was later dismissed from the case. (Notice of Settlement, ECF No. 15; Dec. 14, 2021 ECF Order.)

### B. Defendant's Motion to Dismiss & the First Amended Complaint

On October 25, 2021, Defendant LJRA, the only remaining defendant, filed a letter motion requesting a pre-motion conference for an anticipated motion on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Letter Mot., ECF No. 19.) After a pre-motion conference on December 14, 2021, Judge Matsumoto granted Plaintiff leave to amend her complaint (by January 14, 2022), instead of proceeding with motion practice. (Dec. 14, 2021 ECF Minute Entry.) Judge Matsumoto stated that "[i]f LJ Ross Associates intends to move to dismiss the amended complaint, the parties shall propose a briefing schedule in their [February 4, 2022] joint letter." (*Id.*) On January 18, 2022, Plaintiff filed her First Amended Complaint, alleging violations of the FTC Act and the FDCPA. (FAC, ECF No. 21, ¶ 1.) Judge Matsumoto subsequently set a briefing schedule for the motion, and Defendant filed the fully-briefed motion on March 28, 2022, consistent with Judge Matsumoto's individual rules. (Feb. 7, 2022 Scheduling Order; Def.'s Mot. to Dismiss,[5] ECF No. 23, at ECF page 3.)

### C. The Second Amended Complaint

The fully-briefed motion papers include a document entitled "Amended Complaint," which counsel for Defendant represents was provided by Plaintiff in response to LJRA's motion to dismiss. (Def.'s Mot. to Dismiss, ECF No. 23, ECF pages

---

[5] While the docket text for Defendant's motion describes it as a "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 12(b)(6)," Defendant's memorandum is entitled "Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and Incorporated Brief in Support." (Def.'s Mot. to Dismiss, ECF No. 23, at ECF page 3.) The reference to summary judgment thus appears to have been a docketing error, given the rule cited by Defendant and that Defendant's primary argument is that Plaintiff has failed to state a claim for which relief can be granted. (*See id.*)

49–53; *see* Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF 23, at ECF page 55) (representing that Plaintiff provided the SAC in lieu of an opposition brief).) While Plaintiff's original complaint alleged violations of the FDCPA and FCRA, and her FAC alleged violations of the FDCPA and the FTC Act, the SAC only alleges violations of four subsections of the FDCPA, each of which is considered below. Notably, the SAC has not been formally filed as such, and Plaintiff has never sought, nor been granted, leave to file a second amended complaint. In its reply brief, Defendant objects to the SAC being filed on several grounds. Defendant argues that the SAC is untimely and that Plaintiff was already provided an opportunity to amend. (Def.'s Reply, ECF No. 23, at ECF page 55.) Defendant further argues that filing the SAC would be futile because it does not contain factual support, "instead containing threadbare allegations that merely mimic the elements of a claim." (*Id.* at ECF pages 55–56.) Defendant also posits that it has concerns that Plaintiff's SAC violates Rule 11. (*Id.* at ECF page 56.)

## DISCUSSION

For the following reasons, the Court respectfully recommends that Defendant's motion to dismiss the FAC be denied as moot since Plaintiff has abandoned the claims alleged therein. In addition, in an exercise of discretion, the Court recommends construing Plaintiff's SAC as a motion to amend. So construed, the Court further recommends granting the motion to amend, but only in part. Finally, the Court recommends advising Plaintiff that, going forward, she will not be permitted to file an amended complaint without first filing a motion for leave to amend and receiving permission from the Court.

As noted above, given Plaintiff's *pro se* status, in reviewing the motion, the Court considers the factual allegations set forth in the original complaint, its attachments, the FAC, and the proposed SAC. *Briggs*, 2021 WL 7209004, at *2; *see also Milano*, 2007 WL

2668511, at *2. The Court observes as a threshold matter that "[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Here, Plaintiff's proposed SAC cites to four specific subsections of the FDCPA, and she does not provide any arguments in response to the motion to dismiss, nor does she attempt to defend the claims alleged in the FAC. Accordingly, the Court concludes that Plaintiff has abandoned certain of her claims. Specifically, given that she only includes claims under four specific provisions of the FDCPA in the SAC, the Court finds that she has abandoned any other previously-alleged FDCPA theories, as well as the FTC Act and FCRA claims alleged in the original complaint and the FAC.[6] (SAC, ECF No. 23, ECF page 49, ¶ 1.) Her apparent abandonment of the claims in the FAC renders moot many of the arguments in Defendant's motion to dismiss.

"Ultimately, the question of abandonment is one of intent; ordinarily it makes perfect sense to hold that a party who seeks to file an amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended pleading is

---

[6] Even if Plaintiff did not intend to abandon her FTC and FCRA claims, the Court finds that Plaintiff's complaints do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" as to those claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's FTC Act claims fail because "no private right of action arises under [the FTC] Act." *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978); *see also Washington v. U.S. Tennis Ass'n, Inc.*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003) ("[T]he Federal Trade Commission Act . . . does not create a private right of action for damages."); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 598–99 (S.D.N.Y. 2022) (collecting cases). Plaintiff's FCRA theories fail to state a claim because there are no specific factual allegations from which to infer that the remaining Defendant, LJRA, is a "consumer reporting agency" under the FCRA. *See* 15 U.S.C. § 1681(b) ("It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information . . . ."); 15 U.S.C. § 1681a(f) (defining "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties"). The Court notes that the FAC also contained FDCPA claims, as does the SAC. Those alleged in the SAC are discussed *infra*.

permitted by the court." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). Yet, "[w]here the party is proceeding *pro se*, the question is less easily resolved." *Id.* Here, the Court recommends finding that Plaintiff abandoned her FCRA and FTC Act claims in light of the clear procedural history and the fact that her proposed SAC was provided to Defendant in response to its motion to dismiss.

As to the SAC, Defendant argues that the Court should not allow Plaintiff to file it for several reasons. First, Defendant contends that it was not filed timely. (Def.'s Mot. to Dismiss, ECF No. 23, at ECF page 55.) Second, Defendant posits that the Court already granted leave to amend and that "[t]his Court is not obligated to provide multiple opportunities to amend. Nor does justice call for it based on what is blatant gamesmanship on Plaintiff's part to perpetually alter her claims after LJRA — or the Court — identifies defects in them." (*Id.*) Third, Defendant contends that allowing Plaintiff to file the SAC would be futile because "the second amended complaint contains no factual support, instead containing threadbare allegations that merely mimic the elements of a claim," notwithstanding that "[t]he Court already put Plaintiff on full notice that Plaintiff's original Complaint was defective based on lack of factual specificity and already provided Plaintiff an opportunity to amend." (*Id.* at ECF pages 55–56.) Fourth, Defendant contends that if Plaintiff is permitted to file her SAC, LJRA will be prejudiced by incurring "additional costs to undergo the same process again with another motion to dismiss." (*Id.* at ECF page 56.) Fifth, "LJRA has serious concerns that Plaintiff's second amended complaint violates Fed. R. Civ. P. 11" in that its claims

regarding LJRA's failure to disclose that LJRA is a debt collector in its communications with Plaintiff are frivolous. (*Id.*)[7]

As discussed in more detail below, the undersigned respectfully recommends that Plaintiff's SAC be construed as a motion to amend and that it be granted in part, permitting Plaintiff to proceed on one of her FDCPA claims. The better course would have been for Plaintiff to file a motion to amend under Rule 15(a)(2). However, due to Plaintiff's *pro se* status, the liberal standard applicable to the filing of amended pleadings, and the overlapping standards for a motion to amend and a motion to dismiss under Rule 12(b)(6), the Court respectfully recommends reviewing Plaintiff's proposed SAC as a motion to amend. In addition, because this would be Plaintiff's second amended complaint, which she did not seek or obtain leave to file, the Court further respectfully recommends that Plaintiff be advised that she cannot file any additional amended pleadings without first filing a motion to amend.

## I.  The Motion to Amend and Rule 12(b)(6) Standards

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P.

---

[7] In its motion to dismiss the FAC, Defendant also argues that the case should be dismissed because "Plaintiff fails to assert any facts that show a plausible violation of the [FDCPA], despite this Court having previously warned Plaintiff that her original Complaint and FDCPA allegations lacked necessary factual specificity and the Court having provided Plaintiff an opportunity to amend." (Def.'s Mot. to Dismiss, ECF No. 23, at ECF page 3.) Defendant asserts that "[i]n Plaintiff's Complaint, Plaintiff fails to identify a single false, deceptive, or misleading representation made by LJRA" and that "Plaintiff does not allege that LJRA misrepresented the amount of the debt or that LJRA's collection letter was otherwise false, deceptive, or misleading. Indeed, Plaintiff dropped such allegations from her original Complaint." (*Id.* at ECF pages 13–14.) In its reply, Defendant argues that "Plaintiff's second amended complaint simply parrots her original claim against LJRA — replete with boilerplate, conclusory statements. It appears Plaintiff downloaded a template and used it for her second amended complaint." (Def.'s Reply, ECF No. 23, at ECF page 55.) However, as noted, the Court construes the SAC as a motion to amend, and thus, Defendant's arguments for dismissal of the FAC are largely moot.

15(a)(2). Accordingly, the general rule "in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011); *see also Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (holding that leave to amend should be granted in the absence of "a showing of 'undue delay, bad faith, dilatory motive, [or] futility'") (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). The "relaxed standard" of freely giving leave to amend "applies with particular force to *pro se* litigants." *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 514 (E.D.N.Y. 2014) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999)).

Trial courts have discretion to grant or deny leave to amend. *Nat'l Union Fire Ins. v. PVT Ltd.*, 338 F.R.D. 579, 583 (S.D.N.Y. 2021) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)). As a general rule, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded the opportunity to test [their] claim on the merits." *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190 (noting that the "permissive standard" of Rule 15 is consistent with the Second Circuit's "strong preference for resolving disputes on the merits"); *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (describing "the liberal spirit of Rule 15"); *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (observing that, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint").

An amended pleading will be deemed futile, however, if it cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Milanese v. Rust-*

*Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Puchalski v. FM Constr., Inc.*, No. 18-CV-1596 (SJB), 2020 WL 6727777, at *11 (E.D.N.Y. Nov. 16, 2020); *Nicolosi v. BRG Sports, Inc.*, Nos. 16-CV-2910 (SJ) (CLP), 18-CV-1452 (SJ) (CLP), 2019 WL 5695852, at *4 (E.D.N.Y. Aug. 21, 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) ("[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (quotation marks omitted)). Additionally, "[t]he party opposing a motion to amend bears the burden of demonstrating that the proposed amendment is futile." *Bah v. Apple Inc.*, No. 19-CV-3539 (PKC), 2020 WL 4596839, at *1 (S.D.N.Y. Aug. 11, 2020); *see also Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).

It is well established that "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This is why a *pro se* complaint "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle*, 429 U.S. at 106 (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "'Nonetheless, a *pro se* complaint must state a plausible claim for relief.'" *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)); *see also Selvam v. United States*, 570 F. Supp. 3d 29, 38 (E.D.N.Y. 2021), *aff'd*, No. 21-CV-2513, 2022 WL 6589550 (2d Cir. Oct. 11, 2022). The Second Circuit

"has long accorded *pro se* litigants 'special solicitude' to protect them from 'inadvertent forfeiture of important rights because of their lack of legal training.' But solicitude for *pro se* litigants does not require us to excuse failure to comply with understandable procedural rules and mandatory deadlines." *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 598 (2021) (footnote omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)). Consistent with these principles, in the context of motions to dismiss *pro se* complaints, the Second Circuit has observed that "[c]ertainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

## II. Analysis

### A. Plaintiff's Second Amended Complaint

Mindful that the Court is to grant leave to amend freely, the Court concludes that granting leave to amend is appropriate here. As a threshold matter, although Defendants object to permitting the SAC to be filed, the Court finds that Defendants have not demonstrated that all of the allegations in the SAC are "on their face, entirely futile." *City of Omaha v. CBS Corp.*, No. 08-CV-10816 (PKC), 2010 WL 3958849, at *3 (S.D.N.Y. Sept. 24, 2010); *see also Hatteras Enters., Inc. v. Forsythe Cosm. Grp.*, No. 15-CV-5887 (ADS), 2019 WL 9443845, at *2 (E.D.N.Y. Jan. 14, 2019); *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013) (explaining that when considering whether the party opposing amendment has met its burden of demonstrating futility, "the Court reads the claims at issue in the light most favorable to plaintiff and draw[s] all inferences in [their] favor" (quotation marks omitted)). Further, the Court notes that because of the procedural history here, "Plaintiff[] ha[s] not yet had an opportunity to amend in response to a Court order

13

pointing out the deficiencies in their pleading." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. 2019); *see also Ulbricht v. Ternium S.A.*, No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313, at *12 (E.D.N.Y. Sept. 14, 2020). Accordingly, and construing her SAC as a motion to amend in light of Plaintiff's *pro se* status, the Court respectfully recommends that it be granted in part.[8]

Plaintiff's proposed SAC alleges violations of four subsections of the FCDPA. First, Plaintiff avers that Defendant violated the FDCPA by "[e]ngaging in collection activity to harass, oppress, or abuse Plaintiff in connection with the collection of an alleged debt of approximately $1992 in violation of 15 U.S.C. § 1692d." (SAC, ECF No. 23, at ECF page 52, ¶ 36(a).) Second, Plaintiff contends Defendant violated § 1692e(2)(A) of the FDCPA by "[f]alsely representing the character, amount, or legal status of an alleged debt" in that Defendant "[a]ttempt[ed] to collect $1992 from Plaintiff when such amount is not expressly authorized by law or any agreement." (*Id.* ¶ 36(b), (e).) Third, she alleges Defendants violated § 1692e(10) by "[u]sing false representation or deceptive means via its collection activity and dunning letter(s) or credit reporting to collect or attempt to collect an alleged debt." (*Id.* ¶ 36(c).) Fourth, she states that Defendant's

---

[8] The Court recognizes that this will cause some prejudice to Defendant, but concludes, overall, that the minimal prejudice here is not undue. In so finding, the Court is mindful that "leave to amend should be 'freely given,' Fed. R. Civ. P. 15(a), and that a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir. 1984)). In analyzing "prejudice" in the context of amending pleadings, courts should consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993). In light of the Court's conclusion that Plaintiff alleges sufficient facts to state a claim on which relief could be granted, the additional briefing or minor delay that would result from allowing Plaintiff to file the SAC is not sufficiently prejudicial to Defendant to deny her the opportunity to amend at this stage of the case.

"[f]ail[ure] to disclose in communications from Defendant to Plaintiff that the communication is from a debt collector" violated FDCPA § 1692e(11). (*Id.* ¶ 36(d).)

## B. The Fair Debt Collection Practices Act

### 1. *Applicable Law*

The FDCPA, 15 U.S.C. §§ 1692–1692p, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."[9] 15 U.S.C. §§ 1692a, 1692e. "The FDCPA was enacted 'to eliminate abusive debt collection practices by debt collectors.'" *Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-5685 (SJF) (AKT), 2015 WL 4988103, at *4 (E.D.N.Y. Aug. 19, 2015) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015)). "'To state a FDCPA claim, a plaintiff must show that: (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Id.* (quoting *Campbell v. Bank of N.Y. Mellon Tr. Co.*, No. 11-CV-1588 (CS) (PED), 2012 WL 2952852, at *10 (S.D.N.Y. May 8, 2012), *report and recommendation adopted sub nom. Campbell v. Bank of N.Y. Tr. Co.*, No. 11-CV-1588 (CS) (PED), 2012 WL 2953967 (S.D.N.Y. July 18, 2012)).

---

[9] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt" and "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1692a(3), (5). A "debt collector" under the FDCPA is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

In proscribing the use of false, deceptive, or misleading methods to collect a debt, § 1692e provides a non-exhaustive list of offending acts. *See* 15 U.S.C. § 1692e; *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996); *Rosen v. L J Ross Assocs., Inc.*, No. 19-CV-5516 (ARR) (VMS), 2021 WL 3112321, at *2 (E.D.N.Y. July 22, 2021). In analyzing this section, courts in the Second Circuit are "'guided by two principles of statutory construction.'" *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 213–14 (2d Cir. 2018) (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)). First, the Act shall be "construed liberally to effectuate its stated purpose — i.e., 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Id.* at 214 (quoting 15 U.S.C. § 1692(e)). Second, "collection notices are to be looked at from the perspective of the 'least sophisticated consumer.' That is, 'we ask how the least sophisticated consumer — one not having the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer — would understand the collection notice.'" *Id.* (citation omitted) (quoting *Avila*, 817 F.3d at 75). "Pursuant to this standard, 'a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Id.* (quoting *Avila*, 817 F.3d at 75). "The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).

More specifically, FDCPA subsection 1692e(2)(A) forbids "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e also includes a "catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or

to obtain information concerning a consumer.'" *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) (quoting 15 U.S.C. § 1692e(10)).

    2.  *Analysis*

As noted above, an FDCPA claim must allege (1) that the consumer has been subjected to debt collection activity related to "consumer debt," (2) that the defendant is a "debt collector," and (3) that the defendant carried out an act or omission that violates the FDCPA. *See Jenkins*, 2015 WL 4988103, at *4.

The facts alleged by Plaintiff are sufficient from which to conclude that she meets the FDCPA's definition of "consumer," and that she is a "natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). (*See* SAC, ECF No. 23, at ECF page 50, ¶¶ 11, 15.) Plaintiff further alleges that the debt at issue was "allegedly incurred for personal, family, or household purposes," as required for a claim to be brought under the FDCPA.[10] (SAC, ECF No. 23, at ECF page 51, ¶ 27.) However, because this allegation is phrased as a legal conclusion, her claim is not presumed to be true. *See Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102–03 (2d Cir. 2016) ("These allegations, however, are mere conclusory statements not supported by facts from which the inference could be reasonably drawn that collection efforts arose from a consumer transaction. Accordingly, they are not entitled to a presumption of truth."); *Maleh v. United Collection Bureau, Inc.*, 287 F. Supp. 3d 265, 270–71 (E.D.N.Y. 2018) ("Plaintiff's only allegation regarding the nature of the debt is that it 'arose out of a transaction in which money, property, insurance or services . . . are

---

[10] The FDCPA defines a "debt" as an "obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). This is in contrast to a debt incurred for a commercial purpose. *See Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) ("[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA.").

primarily for personal, family or household purposes.' This allegation does not provide the necessary factual support to sustain Plaintiff's claim." (citation omitted)). Here, the Court finds some support in the record to suggest that Plaintiff's alleged debt was a consumer debt. Plaintiff's original complaint noted that ConEdison is "a regulated utility providing electric and gas service in New York City" and that LJRA "purchased the collection rights to the consumer debt in December 2019" from ConEdison. (Compl., ECF No. 1, at 6–7.)

Notably, in a recent case against LJRA, the Honorable Allyne R. Ross held that an alleged ConEdison debt was subject to the FDCPA. *Rosen*, 2021 WL 3112321, at *1. In an analogous case, the Third Circuit has found that water and sewer obligations (in the context of at-home use) are also considered debts under the FDCPA. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) ("[W]e further will affirm the district court's determination that the water and sewer obligations constitute 'debts' under the FDCPA."), *abrogated on other grounds by Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017); *see also Piper v. Portnoff L. Assocs.*, 274 F. Supp. 2d 681, 687 (E.D. Pa. 2003), *aff'd sub nom. Piper v. Portnoff L. Assocs., Ltd.*, 396 F.3d 227 (3d Cir. 2005). While it would have been preferable for Plaintiff to provide more factual specificity to support her claim that this debt falls under the FDCPA's definition, given the nature of ConEdison's business (which involves the provision of electricity to consumers) and drawing all reasonable inferences in Plaintiff's favor, the Court recommends finding that Plaintiff's allegations regarding the origin of the alleged debt are sufficient to infer that the debt here is of the kind contemplated by the FDCPA.

Second, Plaintiff alleges, and there is no serious dispute, that Defendant is a debt collector. (SAC, ECF No. 23, at ECF page 50, ¶¶ 17–24.)

Third, the Court must consider whether Defendant is plausibly alleged to have committed any acts or omissions in violation of the FDCPA. As noted above, Plaintiff alleges violations of four specific FDCPA subsections in the SAC.

  a.  _"False or Misleading Representations" (§ 1692e)_

In the SAC, Plaintiff claims three theories of liability under Section 1692e, alleging, in the original complaint and her most recent complaint, that she is not indebted to, and has not promised to pay, ConEdison or Defendant the amount of $1,992.[11] (SAC, ECF No. 23, at ECF page 51, ¶¶ 30–33.) As set forth above, subsection 1692e(2)(A) of the FDCPA forbids "[t]he false representation of [ ] the character, amount, or legal status of any debt." Defendant's representation that Plaintiff did owe a $1,992 debt, if inaccurate, would qualify as a false representation of the amount of her debt under § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

As set forth above, whether a representation is false, deceptive, or misleading is evaluated under the "least sophisticated consumer" standard. _Jacobson_, 516 F.3d at 90. In _Rosen v. L J Ross Assocs., Inc._, another plaintiff with an alleged outstanding ConEdison debt that had been sold to Defendant alleged that she had paid some of her bill, making the collection letter she received inaccurate. _See Rosen_, 2021 WL 3112321, at *1. There, the court found that a letter stating an inaccurate amount owed "could reasonably be interpreted as a 'false representation' of the amount of plaintiff's debt," and therefore "violate[d] the FDCPA." _Id._ at *4 (quoting 15 U.S.C. § 1692e(2)); _see also Vangorden v._

---

[11] The Court notes that Defendant argues in the motion to dismiss the FAC that "Plaintiff does not allege that LJRA misrepresented the amount of the debt or that LJRA's collection letter was otherwise false, deceptive, or misleading," having dropped that allegation from the original complaint. (Def.'s Mot. to Dismiss, ECF No. 23, at ECF page 14.) That allegation, which did appear in the original complaint, has since been reiterated in the SAC. (_See_ Compl., ECF No. 1, at 7; SAC, ECF No. 23, at ECF page 51, ¶¶ 25–26, 30.)

*Second Round, Ltd. P'ship*, 897 F.3d 433, 442 (2d Cir. 2018) ("[The Second Circuit] has held that even a partial misstatement of a consumer's debt obligation can be misleading under the FDCPA."); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 113 (E.D.N.Y. 2020) ("Courts in this circuit have held that inaccurate statements made by debt collectors regarding the amount of rent owed states a plausible claim for a § 1692e violation."); *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *5 (S.D.N.Y. Mar. 29, 2018) ("Plaintiff alleges that Defendants sent her a notice requesting a payment that she did not, in fact, owe, thereby misrepresenting the character, amount and legal status of her debt. Accordingly, Plaintiff has adequately pled that Defendants violated Section 1692(e).").

Here, accepting Plaintiff's pleadings as true for purposes of this motion, the Court finds that Plaintiff's § 1692e(2)(A) claim is facially plausible. *See Iqbal*, 556 U.S. at 678. Significantly, the factual record lends credence to her allegation. As noted above, Plaintiff's original complaint appended exhibits that included her correspondence with Sunrise, suggesting that, as of December 9, 2019, she had entered into a repayment plan with Sunrise for a ConEdison debt of $1,992.51. (Ex. D to Compl., ECF 1, at ECF page 45.) In addition, the original complaint alleges that in December 2019, Plaintiff made a payment on that debt to Sunrise. (Compl., ECF No. 1, at 8.) Taking these allegations as true, it is reasonable to infer that the debt amount of $1,992.51 reported by Defendant in its dunning letter of January 1, 2020, the exact same amount as the debt that had been reported by Sunrise, was inaccurate and potentially misleading insofar as the debt amount does not appear to reflect Plaintiff's alleged December 2019 payment to Sunrise. (*See* Ex. A to Answer, ECF No. 11-1.[12]) Accordingly, the Court respectfully recommends

---

[12] As noted *supra* note 3, the Court considers the content of the dunning letter, which

finding that, taking the record as a whole in the light most favorable to Plaintiff, she has alleged sufficient particular facts from which to infer that her 1692e(2)(A) claim has facial plausibility and would not be futile.

Plaintiff's other two theories of liability under § 1692e, brought under subsections (10) and (11), fare less well. Subsection 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). In turn, § 1692e(11) prohibits "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11).

Plaintiff falls short of providing sufficient factual support, even at the motion to amend stage, to support her false representation and failure to disclose claims. As set forth above, the enumerated list in § 1692e includes a "catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.'" *Altman*, 786 F.3d at 194 (quoting 15 U.S.C. § 1692e(10)). Other than the dispute as to whether the $1,992 debt is owed, Plaintiff fails to allege any specific facts from which to conclude that Defendant utilized deceiving or misleading representations, or otherwise failed to disclose pertinent information in its communications with her. Given the bare-bones facts alleged in Plaintiff's complaints and exhibits, the Court is unable to reasonably infer

---

Plaintiff did not attach to her pleadings. "[W]here a court does draw from such extrinsic material, it must construe all reasonable inferences in the non-movant's favor," as the Court does here. *Lively*, 6 F.4th at 305–06.

that Defendant's communications were "misleading," even for the "least sophisticated consumer." *Avila*, 817 F.3d at 75. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under federal pleading standards. *Iqbal*, 556 U.S. at 678. Here, Plaintiff largely repeats the statutory definitions, while failing to offer any specific facts from which to infer that LJRA engaged in false representations or deception that run afoul of § 1692e(10) or (11). (*See* SAC, ECF No. 23, at ECF pages 51–52, ¶ 36.) Accordingly, the Court respectfully recommends denying Plaintiff permission to file her claims under § 1692e(10) and (11), as alleged, because they would be futile.

   b.   *"Annoying, Abusive or Harassing Calls" (§ 1692d)*

The SAC also relies on 15 U.S.C. § 1692d of the FDCPA, which states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute then offers a non-exhaustive list of six scenarios that would be a violation, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). For example, in *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28 (D.D.C. 2012), the court denied the defendant's motion to dismiss when the plaintiff alleged that the defendant exhibited "a pattern of abusive collection strategies against [him], including repeated telephone calls and written requests for payment, after [he] had affirmatively denied owing the monies claimed and furnished proof of payment." 852 F. Supp. 2d at 38 (quotation marks omitted).

Plaintiff's strongest factual claims regarding Defendant's allegedly harassing acts were contained in the FAC, but have since been omitted in the SAC. (*Compare* FAC, ECF

No. 21, *with* SAC, ECF No. 23, at ECF page 49.) In the FAC, she claimed that "[i]n numerous instances, in connection with the collection of debts, Defendant, directly or indirectly, have engaged in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff." (FAC, ECF No. 21, ¶ 39.) She further alleged that Defendant "regularly attempt[ed] to collect debts by contacting Plaintiff by telephone, U.S. mail, and other instrumentalities of interstate commerce" and that Defendant would "(i) continue to call even after being told, either orally or in writing, to stop; [and] (ii) call multiple times per day or frequently over an extended period of time (for example, calling some Plaintiff three or more times per day)." (FAC, ECF No. 21, ¶¶ 11, 13, 17–18.) She further alleged that "[i]n numerous instances, in connection with the collection of debts, Defendant, directly [or] indirectly, . . . caused telephones to ring or engaged Plaintiff in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass the Plaintiff at the called numbers," stating "the natural consequence of such calls has been to harass, oppress or abuse Plaintiff." (*Id.* ¶ 40.) Most of these allegations, however, simply echo the relevant legal definitions. *See* 15 U.S.C. § 1692d (preamble), (6).

The factual allegations in the SAC are even less specific. The only allegation to support her § 1692d claim is that Defendant "[e]ngag[ed] in collection activity to harass, oppress, or abuse Plaintiff in connection with the collection of an alleged debt of approximately $1992." (SAC, ECF No. 23, at ECF page 52.)

Courts have found allegations of § 1692d violations sufficient where, for example, the defendant was alleged to have contacted plaintiff "almost every day for four months," *Annis v. E. Asset Mgmt., LLC*, No. 08-CV-0458 (WMS), 2010 WL 1035273, at *1 (W.D.N.Y. Mar. 18, 2010); or where a plaintiff alleged "receiving over 50 calls from [defendants] over an approximately three month period, all allegedly relating to the

collection of a debt that Plaintiff did not owe," *Sussman v. I.C. Sys., Inc.*, 928 F. Supp. 2d 784, 793 (S.D.N.Y. 2013); or when a defendant (among other annoying, abusive, or harassing behavior) repeatedly called an elderly plaintiff after she told them not to contact her anymore, *see Chiverton v. Fed. Fin. Grp., Inc.,* 399 F. Supp. 2d 96, 104 (D. Conn. 2005).

In contrast, here, even when evaluating the entirety of Plaintiff's pleadings, her assertions are factually threadbare. Without more, the assertion that Defendant "regularly attempt[ed]" to contact her regarding her debt does not meet the statutory definition of annoying, abusive, or harassing conduct. (FAC, ECF No. 21, ¶ 11.) Plaintiff does not offer any dates, or even a time range, as to when Defendant purportedly contacted her, nor does she allege how many times, in what manner, or whether and how she communicated with them to stop contacting her. The Court further notes that Plaintiff's allegation about Defendant's allegedly harassing behavior towards "some" plaintiff, a statement that appears to refer to factual allegations related to one or more individuals other than Ms. Desmarattes, does not suffice to state a claim as to her. (FAC, ECF No. 21, ¶¶ 11, 13, 17–18 (claiming that Defendant would "call multiple times per day or frequently over an extended period of time (for example, calling some Plaintiff three or more times per day)").) Without further factual specificity as to Defendant's harassing conduct to collect the specific debt at issue here, Plaintiff's allegations do not plausibly state a claim under § 1692d.

### C.  Leave to Replead

As set forth above, Defendant argues that Plaintiff should not be permitted to file the SAC. (Def.'s Reply, ECF No. 23, at ECF page 57.) In this circuit, however, generally speaking, plaintiffs are granted leave to amend following a motion to dismiss. *See Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 226 (E.D.N.Y. 2014); *see also* Fed. R. Civ.

P. 15(a)(2). Here, the Court is mindful of the somewhat unique procedural history, and observes that Plaintiff's proposed SAC was submitted without leave of Court and, arguably, contrary to Judge Matsumoto's scheduling order on the motion to dismiss. Accordingly, although the Court recommends permitting Plaintiff to proceed on one of her FDCPA theories, the Court does not recommend granting Plaintiff further leave to replead at this juncture. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, No. 19-CV-3257 (JPO), 2020 WL 4038350, at *7 (S.D.N.Y. July 17, 2020), *aff'd on other grounds*, 6 F.4th 293 (2d Cir. 2021). To the extent Plaintiff seeks leave to replead in the future, she should be required to file an appropriate motion, specifying the nature of any proposed amendments and why leave to amend should be granted.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant's motion to dismiss the First Amended Complaint be denied as moot. The Court further recommends that Plaintiff's proposed Second Amended Complaint should be construed as a motion to amend, that it should be granted in part, and that Plaintiff should be allowed to proceed on her FDCPA claim alleging a violation of § 1692e(2)(A).

\*    \*    \*    \*    \*

This Report and Recommendation will be filed electronically and sent by mail to Plaintiff Melinda Desmarattes. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Kiyo A. Matsumoto, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*,

*Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:    Brooklyn, New York
          January 13, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE